IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DWAYNE M. WOODSON, Inmate #N10392, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) CIVIL NO.  04-100-GPM ) |
| PAM GRUBMAN, EUGENE McADORY, WILLARD ELYEA, PATTI WHITE, ADRIAN FEINERMAN, REETIKA KUMAR, STEPHEN C. DOUGHTY, DR. PLATT, DR. D. HINDERLITER, DR. NEWBOLD, JENNIFER MIDDENDORF, DEB KONORADO, DAWN GRATHLER, HEALTH PROFESSIONALS, LTD., JANE DOE, JOHN DOE, DIETARY MANAGER OF THE MENARD CORRECTIONAL CENTER, R. TUTTLE, ED MIDDENDORF, N. HARWOOD, JOHNATHAN R. WALLS, and MAVIS GROSS, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

# **MEMORANDUM AND ORDER**

**MURPHY, Chief District Judge:**

Plaintiff, an inmate in the Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983.  Plaintiff previously was granted leave to proceed *in forma pauperis*, and he has tendered his initial partial filing fee as ordered.

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(f) and 10(b), the Court finds it appropriate to break the claims in Plaintiff's *pro se* complaint and other papers into numbered counts, as shown

below. Although these counts do not correspond directly to the legal claims as described by Plaintiff, they are based on the Court's determination of the claims that arise out of the facts stated in Plaintiff's complaint. The first eight Plaintiff-described claims involve medical care. The Court treats these claims together, because they all fall under the legal classification of "deliberate indifference to serious medical needs." The Court has separated the medical claims into two separate counts based on the medical need alleged. The parties and the Court will use these designations in all future filings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **COUNT 1:** Against Defendants Pam Grubman, Dr. Platt, Deb Konorado, Dr. Newbold, Jennifer Middendorf, Jonathan R. Walls, and Mavis Gross for deliberate indifference to Plaintiff's serious medical needs of tooth decay and pain in violation of the Eighth Amendment.
>
> **COUNT 2:** Against Defendants Adrian Feinerman, Dr. D. Hinderliter, Stephen C. Doughty, Reetika Kumar, Dawn Grathler, Jonathan R. Walls, Mavis Gross, Pam Grubman, and the Menard Dietary Manager for deliberate indifference to Plaintiff's serious medical need of hypertension in violation of the Eighth Amendment and for violation of the guarantee of equal protection under the Fourteenth Amendment.
>
> **COUNT 3:** Against Defendants R. Tuttle, Ed Middendorf, and N. Harwood for confiscation of Plaintiff's legal papers and legal materials.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides, in pertinent part:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such

relief.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). After evaluating Plaintiff's claims individually, the Court finds it appropriate to exercise its authority under Section 1915A to dismiss those claims that are frivolous before allowing Plaintiff to proceed with his remaining claims. *See House v. Belford*, 956 F.2d 711, 718-19 (7th Cir. 1992).

### GENERAL CONSIDERATIONS

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle*, 429 U.S. at 106; *see also Jones v. Simek*, 193 F.3d 485, 489 (7th Cir. 1999); *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996).

> A prisoner raising an Eighth Amendment claim against a prison official therefore must satisfy two requirements. The first one is an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at ----, 114 S. Ct. at 1977. As the Court explained in *Farmer*, "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id*. The second requirement is a subjective one: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that the Court has defined as "deliberate indifference." *Id*; *see Hudson v. McMillian*, 503 U.S. 1, 5, 112 S. Ct. 995, 998, 117 L.Ed.2d 156 (1992) ("[T]he appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'"); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L.Ed.2d 251 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'").

*Vance v. Peters*, 97 F.3d 987, 991-992 (7th Cir. 1996). However, the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.... Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, … and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer*, 511 U.S. at 842.

The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. The Circuit also recognizes that a defendant's inadvertent error, negligence, or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation.

> Neglect of a prisoner's health becomes a violation of the Eighth Amendment only if the prison official named as defendant is deliberately indifferent to the prisoner's health--that is, only if he 'knows of and disregards an excessive risk to inmate health or safety.'

*Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir. 1995); *see also Steele*, 82 F.3d at 179 (concluding there was insufficient evidence of doctor's knowledge of serious medical risk or of his deliberate indifference to that risk; emphasizing that even malpractice is not enough proof under *Farmer*); *Miller v. Neathery*, 52 F.3d 634, 638-39 (7th Cir. 1995) (applying *Farmer* mandate in jury instruction). However, a plaintiff inmate need not prove that a defendant intended the harm that ultimately transpired or believed the harm would occur. *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996).

## COUNT 1

Plaintiff states that on April 21, 2000, he was given a routine two-year dental screening. At some point thereafter, it was noted in Plaintiff's medical chart that x-rays revealed a cavity that

Case 3:04-cv-00100-GPM-DGW   Document 5   Filed 10/26/05   Page 5 of 12   Page ID #41

needed treatment. Plaintiff was never given this information until he later asked for copies of his medical records. In December 2001, Plaintiff began experiencing constant extreme pain in one of his wisdom teeth. Eventually, a part of the tooth broke off while he was eating. He submitted three emergency grievances regarding the tooth. Plaintiff was seen by Dr. Platt on January 2, 2002, and after an examination, Dr. Platt placed him on the extraction list. Plaintiff requested pain medication, but it was refused without an additional $2.00 co-pay. On April 19, 2002, Plaintiff received a dental call pass, and he believed that the tooth would be extracted at that time. However, when he arrived at the health care unit, he was told he was scheduled for only a routine exam. Plaintiff was again denied pain medication, this time because his appointment was for a check-up, not for treatment. The extraction was scheduled for June 11, 2002, but when he arrived at the dental department on that day, he was told the appointment would have to be rescheduled. He requested that someone examine his tooth because he was in a great deal of pain. On June 18, 2002, he again received a call pass for the dental department. He was examined by Dr. Newbold, who determined that he could not extract the tooth because too much of it was broken away and decayed. Dr. Newbold recommended that an oral surgeon remove the tooth. Plaintiff also states that at this time he argued with Defendants Deb Konorado and Jennifer Middendorf about the co-pay consent form. On July 2, 2002, Plaintiff filed an emergency grievance asking that something be done about his tooth because he was still in "constant pain." On July 5, 2002, the warden classified Plaintiff's grievance as an emergency. His tooth was finally extracted on July 18, 2002. Plaintiff states that he had been waiting for the extraction for 197 days.

Based on these allegations, the legal standards noted above, and the fact that the Seventh Circuit Court of Appeals has recognized that dental care is among the most important medical needs
Page 5 of 12

of inmates, *see Board v. Farnham*, 394 F.3d 469, 480 (7th Cir. 2005), Plaintiff's claim that Defendants were deliberately indifferent to his serious medical need of dental care cannot be dismissed at this point in the litigation. *See* 28 U.S.C. § 1915A.

#### COUNT 2

Plaintiff states that on March 11, 2000, he was taken to the emergency room from Menard Correctional Center because his blood pressure was 172/118. He was kept at the hospital for several hours until his blood pressure decreased. On March 12, 2000, he asked Dr. Feinerman to be placed on a low-sodium diet to help control his blood pressure. Dr. Feinerman told Plaintiff that Menard inmates were not allowed low-sodium diets. On March 23, 2000, Plaintiff asked Dr. D. Hinderliter to be placed on a low-sodium diet. Dr. Hinderliter told Plaintiff that inmates at Menard were not allowed low-sodium diets. On April 23, 2000, Plaintiff asked Dr. Stephen C. Doughty to be placed on a low-sodium diet. Dr. Doughty told Plaintiff there were no low-sodium diets at Menard. On June 24, 2001, Plaintiff again asked Dr. Doughty for a low-sodium diet. Dr. Doughty again denied the request. On February 19, 2002, Plaintiff asked Dr. Reetika Kumar to be placed on a low-sodium diet. Dr. Kumar told Plaintiff that she would look into it because she believed that Plaintiff should be on a low-sodium diet. During a June 16, 2002, physical examination, Plaintiff again asked Dr. Kumar for a low-sodium diet. Plaintiff states that Dr. Kumar wrote the request in Plaintiff's records and reiterated her belief that Plaintiff should be placed on a low-sodium diet, but she also told Plaintiff that even if she ordered it, "they won't do it" because there are no low-sodium diets at Menard. Dr. Kumar told Plaintiff there was nothing she could do. Plaintiff asked who "they" were, but before Dr. Kumar could answer, Defendant Dawn Grathler intervened in the conversation and told Plaintiff that Dr. Kumar had denied the low-sodium diet and that he should stop asking

questions. Plaintiff states he later received copies of his medical records in which his request for a low-sodium diet was scratched over.

On July 2, 2002, Plaintiff filed an emergency grievance about the denial of the low-sodium diet to Warden Walls. On July 5, Warden Walls determined the grievance to be an emergency. However, the grievance was ultimately denied on July 26, 2002, because first, IDOC does not provide low-sodium diets, and second, medical staff had determined that a low-sodium diet was unnecessary.

Plaintiff again saw Dr. Kumar on October 19, 2002. Dr. Kumar told Plaintiff that she believed Plaintiff should have been on a low-sodium diet "all the time." Dr. Kumar told Plaintiff that because she was concerned about his complaint to the Illinois Department of Professional Regulations, she was going to put him on the diet. She told Plaintiff that the diet was available, but that Pam Grubman, Mavis Gross, and the Dietary Manager were lying about the unavailability of the diet because of "some racial stuff." She also told Plaintiff that "they" had been telling her not to order low-sodium diets for patients. Plaintiff states that he began receiving the diet on October 23, 2002, and continues to receive it.

Based on these allegations, Plaintiff has stated a claim of deliberate indifference to his serious medical needs. As such, the claim cannot be dismissed at this point in the litigation. *See* 28 U.S.C. § 1915A.

**COUNT 3**

Plaintiff states that on January 13, 2002, several contraband items were confiscated from his cell while he was outside. Among the items taken were non-contraband pages of legal notes and other legal documents. Plaintiff was found guilty of possession of contraband by the Adjustment

Committee. He was later told that all of the non-contraband items would have to be sent home or destroyed, despite Plaintiff's request for their return. Defendants R. Tuttle, Ed Middendorf, and N. Harwood refused to return them to Plaintiff.

With these allegations, the Court believes that Plaintiff is attempting to state a claim that he was denied access to courts by having his legal papers confiscated. The Seventh Circuit uses a two-part test to decide if prison administrators have violated the right of access to the courts. *Smith v. Shawnee Library Sys.*, 60 F.3d 317 (7th Cir. 1995); *Jenkins v. Lane*, 977 F.2d 266, 268 (7th Cir. 1992). First, the prisoner must show that prison officials failed "to assist in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Jenkins*, 977 F.2d at 268, *quoting Bounds v. Smith*, 430 U.S. 817, 828 (1977). Second, he must be able to show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." *Alston v. DeBruyn*, 13 F.3d 1036, 1041 (7th Cir. 1994); *accord Jenkins*, 977 F.2d at 268; *Shango v. Jurich*, 965 F.2d 289, 291 (7th Cir. 1992); *Howland v. Kilquist*, 833 F.2d 639, 642-43 (7th Cir. 1987); *Hossman v. Sprandlin*, 812 F.2d 1019, 1021 n.2 (7th Cir. 1987). That means that a detriment must exist, a detriment resulting from illegal conduct that affects litigation. It does not mean that any delay is a detriment. *Kincaid v. Vail*, 969 F.2d 594, 603 (7th Cir. 1992). Regardless of the length of an alleged delay, a prisoner must show actual substantial prejudice to specific litigation. *Kincaid,* 969 F.2d at 603.

Based on these standards, Plaintiff has not stated a claim of denial of access to courts. Accordingly, this claim is **DISMISSED** with prejudice from the action. Furthermore, because Defendants **R. TUTTLE, ED MIDDENDORF, and N. HARWOOD** are listed only in connection

with this claim, they are **DISMISSED** as Defendants from the action.

### DEFENDANTS

A word about Defendants is in order. Plaintiff lists Eugene McAdory, Jr., Willard Elyea, Patti White, Health Professionals Limited, John Doe, and Jane Doe as Defendants in the caption of his complaint. However, the statement of claim does not include any allegations against these Defendants. "A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption." *Collins v. Kibort,* 143 F.3d 331, 334 (7th Cir. 1998); *see also Crowder v. Lash,* 687 F.2d 996, 1006 (7th Cir. 1982) (director of state correctional agency not personally responsible for constitutional violations within prison system solely because grievance procedure made him aware of it and he failed to intervene). Accordingly, **EUGENE McADORY, JR., WILLARD ELYEA, PATTI WHITE, HEALTH PROFESSIONALS LIMITED, JOHN DOE, and JANE DOE** are **DISMISSED** as Defendants from the action.

### SUMMARY AND CONCLUSION

In summary, Plaintiff is allowed to proceed against Defendants Pam Grubman, Adrian Feinerman, Reetika Kumar, Stephen Doughty, Dr. Platt, Dr. D. Hinderliter, Dr. Newbold, Jennifer Middendorf, Deb Konorado, Dawn Grathler, Menard Dietary Manager, Jonathan R. Walls, and Mavis Gross on Counts 1 and 2 of the complaint. Count 3 is **DISMISSED** from the action. Defendants R. Tuttle, Ed Middendorf, N. Harwood, Eugene McAdory, Jr., Willard Elyea, Patti White, Health Professionals Limited, John Doe, and Jane Doe are also **DISMISSED** from the action.

The Clerk of Court is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for Defendants **PAM GRUBMAN, ADRIAN FEINERMAN, REETIKA KUMAR, STEPHEN DOUGHTY,**

**DR. PLATT, DR. D. HINDERLITER, DR. NEWBOLD, JENNIFER MIDDENDORF, DEB KONORADO, DAWN GRATHLER, MENARD DIETARY MANAGER, JONATHAN R. WALLS, and MAVIS GROSS**.  The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on Defendants **PAM GRUBMAN, ADRIAN FEINERMAN, REETIKA KUMAR, STEPHEN DOUGHTY, DR. PLATT, DR. D. HINDERLITER, DR. NEWBOLD, JENNIFER MIDDENDORF, DEB KONORADO, DAWN GRATHLER, MENARD DIETARY MANAGER, JONATHAN R. WALLS, and MAVIS GROSS** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure.  Process in this case shall consist of the complaint, applicable Forms 1A and 1B, and this Memorandum and Order.  For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form.

With respect to former employees of the Illinois Department of Corrections (I.D.O.C.) who no longer can be found at the work address provided by Plaintiff, I.D.O.C. shall furnish the Marshal with that Defendant's last-known address upon issuance of a Court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise), and any documentation of the address shall be retained only by the Marshal.  Address information obtained from I.D.O.C. pursuant to such order shall not be maintained in the Court file nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received.  If a waiver of

service is not returned by a Defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk of Court prepare a summons for that Defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Memorandum and Order upon that Defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for that Defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said Defendant. Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required. Costs of service will be taxed against the personally-served Defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless that Defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon Defendants or, if appearance has been entered by counsel, upon their attorneys, a copy of every further pleading or other document submitted for consideration by this Court. He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to Defendants or their counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule of the United States District Court for the Southern District of Illinois 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pretrial

proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral*.

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts. This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs. Failure to do so will result in dismissal of this action. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED: 10/25/05

                                                 s/ G. Patrick Murphy
                                                 G. PATRICK MURPHY
                                                 Chief United States District Judge